James V. CASCI, petitioner, Appellant,

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. C1–84–1117.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Jerrold M. Hartke, Hartke & Montpetit, S. St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, James B. Early, Sp. Asst. Attys. Gen., St. Paul, for respondent.

Heard, considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ.

## OPINION

PARKER, Judge.

This is an appeal from an order sustaining the Commissioner of Public Safety's revocation of appellant's driver's license pursuant to Minn.Stat. § 169.123 (1982), the implied consent statute.

A Minnesota state trooper stopped appellant's car after observing him weaving on and off eastbound I–94. The officer arrested appellant for DWI and read him the implied consent advisory. After speaking with his attorney, appellant refused to take the breath test, stating that his attorney had advised him to refuse.

Appellant's license was revoked, and he petitioned for a hearing in district court. Testimony was received that he could have been mentally impaired at the time of the refusal because of the unexpected effects of alcohol mixed with an overdose of Lomotil. Appellant appeals from the trial court's order. We affirm.

## FACTS

Appellant James Casci had been taking the drug Lomotil to stop diarrhea caused by surgery for an obstructed bowel. On the evening of his arrest Casci took six Lomotil tablets instead of the one before mealtime recommended by his doctor, out of frustration that the medication was not working. The medication did not contain a warning against mixing the drug with alcohol, and Casci was not aware of possible adverse side effects. Shortly after he consumed the tablets, Casci said, he consumed three alcoholic drinks at a bar. He then entered his car and began to drive home.

A Minnesota state trooper saw Casci weaving on and off I–94 in St. Paul and stopped his car. The trooper suspected Casci was intoxicated and asked him to take a preliminary screening breath test. The test indicated an alcohol concentration of .11 or more, and the trooper arrested Casci for DWI.

The trooper read the implied consent advisory, and Casci asked to speak with his attorney. After doing so, Casci refused to

take the breath test, stating that his attorney had advised him not to take it.

Casci's license was revoked, and he petitioned for a hearing. Casci testified he could not recall anything after the initial car stop. His physician testified that Casci could have been mentally impaired at the time he refused to take the test because of the effects of alcohol mixed with an overdose of Lomotil. The trial court sustained the revocation, and Casci appeals.

## ISSUE

Is mental impairment caused by involuntary intoxication a valid defense under the implied consent statute?

## DISCUSSION

Minn.Stat. § 169.123, subd. 6 (Supp. 1983), provides that in an implied consent hearing "[i]t shall be an affirmative defense for the petitioner to prove that, at the time of the refusal, his refusal to permit the test was based upon reasonable grounds."

Casci contends he consumed alcohol and several times the prescribed dosage of Lomotil, unaware that the mixture could enhance the potency of each. He claims the mixture induced "pathological intoxication" to the level of temporary insanity, so that he did not know what he was doing when he refused the breath test. Although he did not specifically allege this defense in his petition requesting a hearing, Casci now argues this condition should constitute reasonable grounds to refuse the breath test.

Minn.Stat. § 169.123, subd. 5c (1982), provides that the petition "shall state with specificity the grounds upon which the petitioner seeks rescission of the order of revocation or denial." To raise any issue at an implied consent hearing, the petitioner must specifically state the issue in his petition for review, and when an issue is not raised with specificity, it is not properly before the trial court. *See Schafer v. Commissioner of Public Safety*, 348 N.W.2d 365, 368 (Minn.Ct.App. 1984). The Attorney General argues that since the issue was not properly before the trial court, Casci cannot raise it on appeal.

It may well be true that the issue was not properly raised. However, we grant review to reiterate the rule in *Rude v. Commissioner of Public Safety*, 347 N.W.2d 77, 80 (Minn.Ct.App.1984), and to expand its applicability to a somewhat different defense. In *Rude* we stated:

> "Under the implied consent statute, *any inquiry into* the driver's *capacity* to make a knowing, voluntary, *or* intelligent *choice* is *immaterial.*"

*Id.* (quoting *State, Dept. of Public Safety v. Hauge*, 286 N.W.2d 727, 728 (Minn.1979) (emphasis added)).

Casci attempts to distinguish *Rude* by arguing that Rude's mental condition was caused by factors within her control while his was not. This distinction carves an exception from the rule which is not supported. Moreover, Casci's position is inconsistent with a primary purpose of the statute, that is, to promote public safety on the highway. *Id.* (citing *State, Dept. of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981)).

Casci also contends that *State v. Altimus*, 306 Minn. 462, 238 N.W.2d 851 (1976), supports his position. *Altimus* discussed four kinds of involuntary intoxication that have been recognized as defenses to a criminal charge. *Altimus* is not applicable to this case because the implied consent proceeding is civil in nature. *See Goldsworthy v. State, Department of Public Safety*, 268 N.W.2d 46, 49 (Minn.1978). Criminal defenses such as those relating to capacity are not relevant because license revocation "is not a punishment but is rather an exercise of the police power for the protection of the public." *State, Department of Highways v. Normandin*, 284 Minn. 24, 26, 169 N.W.2d 222, 224 (1969).

## DECISION

Mental impairment due to involuntary intoxication is not a valid defense under the implied consent statute.

Affirmed.